UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROBERT CAMPBELL, as the Administrator of the            19 Civ. 2117
Estate of Erick Campbell, ROBERT CAMPBELL,
individually, AIDA CAMPBELL, and ERIC CAMPBELL,         **SECOND AMENDED**
                                                        **COMPLAINT**
                          Plaintiffs,

          -against-                                     Jury Trial Demanded

CITY OF YONKERS, POLICE OFFICER TIMOTHY
COOPER, POLICE OFFICER THOMAS BRAIG,
POLICE OFFICER ADAM WALENCIK, DETECTIVE
THOMAS MARELLO, SERGEANT MARK WISSNER,
DETECTIVE BRIAN MENTON, DETECTIVE TERENCE
MALONE, SERGENT JOSEPH BAROSA, DETECTIVE
MICHAEL MCGEE, AGENT BRENDAN KENNEY,
AGENT ANDREW FISHER, AGENT DANIEL
CONLON, and AGENT DANIEL MCKENNA,

                          Defendants.
------------------------------------------------------------------------X

       Plaintiffs, by their attorneys, HELD & HINES, LLP, complaining of the defendants,

hereinafter state and allege as follows upon information and belief:

## PRELIMINARY STATEMENT

       1.      In the afternoon of December 15, 2017, the defendant local law enforcement

officers and federal agents initiated a warrantless apprehension and seizure of Erick Campbell

(hereinafter, "decedent") culminating in said defendants shooting decedent at least ten (10) times

without provocation and legal justification, and in contravention of the decedent's clearly

established constitutional rights.

       2.      As a result of this lethal and excessive use of force, decedent sustained substantial

physical injuries and succumbed to his injuries shortly thereafter.

       3.      Plaintiff Robert Campbell, as the Administrator of the Estate of Erick Campbell,

seeks compensatory and punitive damages against each of the defendants on behalf of the decedent's estate for their violation of decedent's rights, privileges, and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and their violations of the laws of the State of New York, together with reasonable attorney's fees and costs.

4.     Plaintiffs Robert Campbell, as the Administrator of the Estate of Erick Campbell, as well as decedent's son, Eric Campbell, mother, Aida Campbell, and father, Robert Campbell, also seek compensatory and punitive damages against each of the defendants on the supplemental state law claims of (a) wrongful death and conscious pain and suffering, (b) assault and battery, (c) negligence, (d) negligent hiring, training, supervision and retention, (e) intentional and negligent infliction of emotion distress, and (f) loss of love, companionship, support, and parental guidance.

## JURISDICTION AND VENUE

5.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiffs further invoke the supplemental jurisdiction of this Court under 28 U.S.C. § 1367 to hear and decide claims arising under state law.

6.     This action is brought pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court has jurisdiction over Plaintiffs' claims against the defendant FBI agents pursuant to 28 U.S.C. §§ 1331 and 2201.

7.     Plaintiffs' claim for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in action brought pursuant to 42 U.S.C. § 1983.

8.     Venue is proper in this district pursuant to 28 U.S.C. §§1391(b), 1391(c), and

1402(b) in that decedent's Estate was filed in Westchester County, New York and all, or a substantial part, of the acts and omissions complained of herein occurred within Westchester County, which is within this judicial district.

9. The amount in controversy is in excess of $75,000.00.

## THE PARTIES

10. At all times alleged herein, decedent was a resident of the State of New York.

11. Pursuant to Decree and Letters of Administration issued to Robert Campbell by the Westchester County Surrogate's Court dated June 12, 2018, Robert Campbell is authorized and empowered to act as a fiduciary of the Estate of Erick Campbell and commence this action on the Estate's behalf.

12. At all times alleged herein, plaintiffs Robert Campbell, Aida Campbell, and Eric Campbell were and remain residents of the State of Florida.

13. Plaintiffs Robert Campbell and Aida Campbell are the father and mother of decedent Erick Michael Campbell, respectively.

14. Plaintiff Eric Campbell is the son and only child of decedent Erick Michael Campbell.

15. Upon information and belief, and at all times alleged herein, defendant City of Yonkers was and remains a body corporate and politic, constituting a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York to maintain a police department, the Yonkers Police Department ("YPD"), which acts as its agents in the area of law enforcement and for which it is ultimately responsible. The City of Yonkers assumes the risks incidental to the maintenance of a police force and the employment of police officers. Employees of the City of Yonkers and members of the YPD also act as agents in the area of

emergency medical care.

16.    At all times alleged herein, defendants Timothy Cooper, Thomas Braig, Adam Walencik, Thomas Marello, Mark Wissner, and Brian Menton were law enforcement officers employed by the City of Yonkers on the date of the subject incident and were direct participants in the wrongful acts and omissions alleged herein.

17.    At all times alleged herein, defendant Terence Malone was a law enforcement officer employed by the County of Westchester and Westchester County Police Department on the date of the subject incident and was a direct participant in the wrongful acts and omissions alleged herein.

18.    At all times alleged herein, defendants Joseph Barosa and Michael McGee were law enforcement officers employed by the Village of Tarrytown and Tarrytown Police Department on the date of the subject incident and were direct participants in the wrongful acts and omissions alleged herein.

19.    At all times alleged herein, defendants Brendan Kenney, Andrew Fisher, Daniel Conlon, and Daniel McKenna (collectively, the "defendant FBI agents") were employed by the United States of America and Federal Bureau of Investigation on the date of the subject incident and were direct participants in the wrongful acts and omissions alleged herein while acting under the color of federal law.

20.    At all times alleged herein, defendants Timothy Cooper, Thomas Braig, Adam Walencik, Thomas Marello, Mark Wissner, Brian Menton, Terence Malone, Joseph Barosa, and Michael McGee (hereinafter, collectively referred to as the "defendant local law enforcement officers") were direct participants in the wrongful acts and omissions alleged herein while acting under the color of state law.

21.     Upon information and belief, and at all times alleged herein, the defendant local law enforcement officers engaged in the alleged wrongful acts and omissions while acting on behalf of a federal agency (the Federal Bureau of Investigation).

22.     At all times alleged herein, the defendant local law enforcement officers engaged in the alleged wrongful acts, omissions, misconduct, and abuse while acting under color of law.

23.     At all times alleged herein, the defendant FBI agents and local law enforcement officers knowingly participated in, acquiesced to, contributed to, encouraged, authorized (either expressly or implicitly), approved, and/or were deliberately indifferent to the wrongful acts and omissions alleged herein.

24.     At all times alleged herein, the defendant FBI agents engaged in the alleged wrongful acts, omissions, misconduct, and abuse while acting under color of federal law.

25.     At the time of the subject incident, the defendant local law enforcement officers may have been acting as agents of and/or on behalf of the FBI.

26.     At the time of the subject incident, the defendant local law enforcement officers may have been acting as an employee of and/or on behalf of their respective municipality and/or police department.

27.     The defendant FBI agents are sued in their individual capacity.

**FACTUAL ALLEGATIONS**

28.     Prior to December 15, 2017, the Federal Bureau of Investigation ("FBI") purportedly arranged and initiated a series of law enforcement actions focused on apprehending individual(s) suspected of bank robberies in Westchester County, New York. As part of this action, employees and agents of the FBI partnered with local law enforcement agencies. These local law

enforcement agencies included the City of Yonkers Police Department, the Westchester County Police Department, and the Tarrytown Police Department.

29.     Upon information and belief, the defendant FBI agents designed and planned the subject operation, initiated it, directed the assignments for it, decided on the tactical procedures, and were responsible for the conduct of the operation, including but not limited to the training, supervision, and coordination of all law enforcement involved, including but not limited to the defendant FBI agents and local law enforcement officers.

30.     Upon information and belief, prior to December 15, 2017, the defendant FBI agents held a briefing with, among others, the defendant local law enforcement officers. Upon information and belief, no "takedown" procedures, use of force protocols, supervision protocols, procedures for vehicle stops, or any other information on how to effectuate the arrest of a suspect were discussed. Upon information and belief, no procedures for emergency medical treatment were discussed nor were any actions taken to ensure an ambulance was near the scene during the course of the operation in the event emergency medical treatment was required. Upon information and belief, the defendant FBI agents conducted no formal preparation or training for the local law enforcement officers involved in this operation. The defendant FBI agents failed to have proper protocols in place and failed to conduct any training despite their knowledge of the systemic deficiencies in YPD's practices, especially with regard to uses of force and training.

31.     Prior to and on the afternoon of December 15, 2017, the defendant FBI agents and local law enforcement officers were positioned in the vicinity of Aqueduct Avenue and Delano Avenue, Yonkers, New York for the purpose of conducting a surveillance operation on a vehicle that had been purportedly reported stolen and used in a bank robbery (hereinafter, the "subject vehicle").

32.     At a time prior to 3:48 p.m. on December 15, 2017, the defendants purportedly secured a GPS tracking device to the subject vehicle.

33.     At approximately 3:48 p.m. on the afternoon of December 15, 2017, decedent was observed approaching the subject vehicle and carrying a black duffle bag. This was reported over radio transmissions by YPD Detective Thomas Marello ("Det. Marello"). Decedent was not known to the defendant FBI agents and local law enforcement officers nor was he a suspect in any bank robbery.

34.     Then, it was reported over radio transmission that decedent entered the subject vehicle, placed the duffle bag into the subject vehicle, and then exited the subject vehicle to clear snow from the back window. Upon information and belief, decedent did not have the duffle bag with him when he exited the subject vehicle to clear snow from the back window. It is unknown at this time how long decedent was in the subject vehicle, or how long he was outside the subject vehicle clearing snow from the back window.

35.     After clearing snow from the back window, decedent then re-entered the subject vehicle for an unknown period of time and then exited again to clear snow from the windows. Upon information and belief, decedent did not have the duffle bag with him as he was clearing snow from the other windows. It is unknown at this time how long decedent was in the subject vehicle, or how long he was outside the subject vehicle clearing snow from the other windows.

36.     Upon decedent being observed to re-enter the subject vehicle the final time, Special Agent Brendan Kenney ("S.A. Kenney") belatedly, yet hastily, issued an order to move in on the subject vehicle with the intent to arrest decedent.[1] In that effort, S.A. Kenney quickly pulled his unmarked vehicle within a few inches of the subject vehicle's rear bumper, while Westchester

---

[1] At no time did the Government's law enforcement agents have a warrant to arrest decedent.

County Police Department Detective Terence Malone ("Det. Malone") converged on the subject vehicle from the front[2]. S.A. Kenney and Det. Malone both approached decedent with their firearms drawn.

37.     Upon information and belief, S.A. Kenney and Det. Malone did not identify themselves as law enforcement. Upon information and belief, S.A. Kenney and Det. Malone did not activate the lights and sirens on their respective vehicles.

38.     Upon information and belief, Supervisory Special Agent Daniel McKenna ("S.A. McKenna") also approached the subject vehicle in his unmarked vehicle, as did Special Agents Andrew Fisher ("S.A. Fisher") and Daniel Conlon ("S.A. Conlon") and YPD officers Brian Menton, Timothy Cooper and Thomas Braig ("Det. Menton," "P.O. Cooper" and "P.O. Braig," respectively) in their unmarked vehicles. S.A. McKenna, S.A. Fisher, S.A. Conlon, Det. Menton, P.O. Cooper and P.O. Braig blocked in the subject vehicle with their vehicles and then exited same to take positions of cover in order to engage decedent.

39.     Sergeant Joseph Barosa ("Sgt. Barosa") and Detective Michael McGee ("Det. McGee") of the Tarrytown Police Department also converged their unmarked vehicle(s) upon the subject vehicle, positioning approximately fifteen (15') feet behind Det. Malone's vehicle. Sgt. Barosa and Det. McGee then exited their car and approached the decedent.

40.     Upon information and belief, S.A. McKenna, S.A. Fisher, S.A. Conlon, Det. Menton, P.O. Cooper, P.O. Braig, Sgt. Barosa, and Det. McGee did not activate the lights and sirens on their respective vehicles. Upon information and belief, S.A. McKenna, S.A. Fisher, S.A. Conlon, Det. Menton, P.O. Cooper, P.O. Braig, Sgt. Barosa, and Det. McGee did not identify themselves as law enforcement.

---

[2] The defendants' statements provided as part of a Critical Use of Force investigation are inconsistent in whether Det. Malone approached the subject vehicle on foot or in a vehicle.

41.     Upon information and belief, decedent attempted to drive away as he was in fear for his life and safety, not realizing that the people approaching him with guns drawn were law enforcement.

42.     The Cooper/Braig vehicle then rammed the driver's side, front quarter panel of the subject vehicle. S.A. Kenney then returned to his vehicle and rammed the subject vehicle.

43.     S.A. Kenney purportedly exited his vehicle and then heard someone yell, "Gun, gun, gun, he has a gun. He is raising his gun up." S.A. Kenney then heard a shot, upon information and belief to be fired by P.O. Cooper, followed by a series of other shots. S.A. Kenney purportedly observed the rear window of the subject vehicle explode and shatter and thought (incorrectly) that the decedent was shooting at Det. Malone. At this time, S.A. Kenney fired two (2) rounds at decedent through the subject vehicle's rear door. P.O. Cooper, P.O. Braig, Det. Marello, and Sgt. Wissner also fired their weapons at decedent.

44.     Upon information and belief, S.A. Kenney fired two (2) rounds at decedent; P.O. Cooper fired sixteen (16) rounds at decedent, emptying his 16-round magazine; P.O. Braig fired three (3) rounds at decedent; Det. Marello fired five (5) rounds at decedent; and Sgt. Wissner fired one (1) round at decedent.

45.     Decedent was shot at least ten (10) times, causing decedent to suffer six (6) penetrating gunshot wounds, four (4) perforating gunshot wounds, and four (4) exit wounds to his left armpit, left shoulder blade, left chest, mid-left back, left medial back, left hip, upper left back, mid-back, left elbow, and left forearm.

46.     At no time did decedent fire a gun at the defendants.

47.     At no time did decedent aim a gun at the defendants.

48.     Upon the cessation of gunfire, the defendants did not render immediate medical

assistance to decedent. Rather, despite decedent being critically injured, but still breathing, the defendant FBI agents and local law enforcement officers first searched the subject vehicle and duffle bag. Upon completion of that search, the defendant FBI agents and local law enforcement officers removed decedent from the vehicle; however, they did not render immediate medical assistance at that time either. Rather, the defendant FBI agents and local law enforcement officers initiated a search of decedent's pants for weapons and then for his wallet and identification. Only after finding decedent's wallet and identification did the defendant FBI agents and local law enforcement officers begin CPR and request an ambulance; however, the delay was to extensive.

49.    Rather than use the GPS tracker to monitor and/or surveille decedent, or initiate a simple traffic stop of decedent, or effect his arrest on either occasion that decedent exited the subject vehicle to clear snow from the rear windshield and then the windows, the defendant FBI agents and local law enforcement officers, led by defendant Kenney, decided to use a dangerous, unnecessary, and unplanned technique which involved "boxing in" the subject vehicle.

50.    By boxing in subject vehicle in this way, the defendant FBI agents and local law enforcement officers created an unreasonable risk of harm to decedent and themselves, and the public at large.

51.    Then, in violation of proper protocol, the defendant FBI agents and local law enforcement officers purportedly approached the decedent with their guns drawn and pointed at decedent and yelled for him to show his hands. Upon information and belief, decedent's window was up but cleared of snow, so the defendant FBI agents and local law enforcement officers could see him, but decedent may not have been able to hear them. When the defendant FBI agents and local law enforcement officers were within a few feet away (if not less) from decedent's window, defendants Cooper, Kenney, Braig, Marello, and Wissner intentionally discharged their firearms

approximately twenty-five (25) times at decedent, striking decedent at least ten (10) times and fatally wounding him.

52.     Decedent did not give the defendant FBI agents and local law enforcement officers any reason to believe he had committed, was committing, or was about to commit a felony. In fact, the defendants only intended to arrest and charge decedent with criminal possession of stolen property (i.e., the subject vehicle), which is a Class A misdemeanor.

53.     The defendant FBI agents and local law enforcement officers' use of the aforesaid maneuvers, strategies, tactics, and deadly force to effectuate a misdemeanor arrest was excessive, abusive, and grossly disproportionate.

54.     Decedent was declared dead at Montefiore Medical Center, Wakefield Emergency Department, at 4:50 p.m. on December 15, 2017.

55.     Decedent is survived by his son, Eric Campbell, and parents, Robert and Aida Campbell.

56.     Each of the defendant FBI agents and local law enforcement officers were personally involved in the wrongful acts and omissions alleged herein, including but not limited to the apprehension of decedent, shooting of decedent, causing the death of decedent, and/or denial and/or delay of access to emergency medical care. None of the defendant FBI agents and local law enforcement officers timely intervened to provide adequate medical attention to decedent when the seriousness of his condition was or should have been readily apparent to them.

57.     As described above, each of the defendant FBI agents and local law enforcement officers subjected decedent to cruel and unusual punishment.

58.     As described above, each of the defendant FBI agents and local law enforcement officers was deliberately indifferent to decedent's health, safety, and well-being.

59.     As described above, none of the defendant FBI agents or local law enforcement officers attempted to use non-lethal means of control prior to using deadly force on decedent.

60.     Instead, as described above, and upon information and belief, the defendant FBI agents and local law enforcement officers began shooting their weapons at decedent without cause or justification and out of vengeance and malice.

61.     The defendant FBI agents and local law enforcement officers subjected decedent to unnecessary and wanton infliction of pain.

62.     The defendant FBI agents and local law enforcement officers subjected decedent to violations of his constitutional rights.

63.     The force described above was grossly disproportionate to the circumstances then and there existing.

64.     Upon information and belief, the defendant FBI agents and local law enforcement officers lacked any form of justifiable cause or reason to use lethal force upon decedent as decedent did not pose a danger to the life of any defendant nor others and was not a danger to cause serious physical injury to any defendant or others.

65.     Upon information and belief, at no point during the time period mentioned herein did decedent offer violence to any person.

66.     By reason of the foregoing, the defendant FBI agents and local law enforcement officers violated the decedent's liberty and property interests in violation of due process of law.

67.     As set forth above, the subject incident constituted an unnecessary, unreasonable, and excessive use of force.

68.     The aforesaid acts and omissions violated the decedent's clearly established civil rights secured by the United States Constitution and were the direct and proximate cause of the

injuries suffered.

69.     The aforesaid acts and omissions of the defendant FBI agents and local law enforcement officers were malicious and served no legitimate penological interest.

70.     The defendant FBI agents and local law enforcement officers violated decedent's rights secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution.

## NOTICE OF CLAIM

71.     Pursuant to New York General Municipal Law § 50-e, on or about March 7, 2018, decedent's father, plaintiff Robert Campbell, caused a Notice of Claim to be timely served upon defendants City of Yonkers, the Yonkers Police Department, and the Police Officers "John Doe" on behalf of himself and the Estate of Erick Campbell as the Estate's then-proposed Administrator.

72.     After Robert Campbell was granted Letters of Administration for the Estate on or about June 12, 2018, he caused a Notice of Claim to be timely served upon defendants City of Yonkers, the Yonkers Police Department, and Police Officers "John Doe" on his own behalf and as the actual Administrator of the Estate, on or about July 17, 2018.

73.     By Petition filed on February 12, 2019 and returnable April 10, 2019, plaintiffs Aida Campbell and Eric Campbell have moved the Supreme Court, Westchester County, for leave to serve a late Notice of Claim upon the defendants City of Yonkers, the Yonkers Police Department, and Police Officers "John Doe."

## FEDERAL CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights*
*By Defendant Timothy Cooper*

74.     Plaintiffs repeat and re-allege each and every allegation set forth in the prior

paragraphs as if fully set forth herein.

75.    As alleged throughout the Second Amended Complaint, defendant Timothy Cooper was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

76.    As alleged throughout the Second Amended Complaint, defendant Timothy Cooper deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

77.    Defendant Timothy Cooper and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

78.    The conduct of defendant Timothy Cooper alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

79.    Defendant Timothy Cooper failed to intervene to protect decedent's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

80.    As alleged throughout the Second Amended Complaint, defendant Timothy Cooper conspired together with the co-defendant FBI agents and local law enforcement officers to deny

decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

81.    Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, the defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

82.    Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

83.    Because defendant Timothy Cooper, while acting under color of state law, was deliberately indifferent to decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to 42 U.S.C. § 1983.

84.    To the extent defendant Timothy Cooper was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## SECOND CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights
By Defendant Thomas Braig*

85.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

86.    As alleged throughout the Second Amended Complaint, defendant Thomas Braig was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

87. As alleged throughout the Second Amended Complaint, defendant Thomas Braig deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

88. Defendant Thomas Braig and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

89. The conduct of defendant Thomas Braig alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

90. Defendant Thomas Braig failed to intervene to protect decedent's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

91. As alleged throughout the Second Amended Complaint, defendant Thomas Braig conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

92. Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper

use of firearms.

93.     Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

94.     Because defendant Thomas Braig, while acting under color of state law, was deliberately indifferent to decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to 42 U.S.C. § 1983.

95.     To the extent defendant Thomas Braig was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## THIRD CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights By Defendant Adam Walencik*

96.     Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

97.     As alleged throughout the Second Amended Complaint, defendant Adam Walencik was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

98.     As alleged throughout the Second Amended Complaint, defendant Adam Walencik deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

99.    Defendant Adam Walencik and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

100.    The conduct of defendant Adam Walencik alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

101.    Defendant Adam Walencik failed to intervene to protect decedent's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

102.    As alleged throughout the Second Amended Complaint, defendant Adam Walencik conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

103.    Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

104.    Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

105.    Because defendant Adam Walencik, while acting under color of state law, was deliberately indifferent to decedent's constitutionally protected rights, Plaintiffs seek damages

pursuant to 42 U.S.C. § 1983.

106.    To the extent defendant Adam Walencik was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## FOURTH CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights By Defendant Thomas Marello*

107.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

108.    As alleged throughout the Second Amended Complaint, defendant Thomas Marello was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

109.    As alleged throughout the Second Amended Complaint, defendant Thomas Marello deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

110.    Defendant Timothy Cooper and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

111.    The conduct of defendant Thomas Marello alleged herein was, *inter alia*, criminally

reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

112. Defendant Thomas Marello failed to intervene to protect decedent's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

113. As alleged throughout the Second Amended Complaint, defendant Thomas Marello conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

114. Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, the defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

115. Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

116. Because defendant Thomas Marello, while acting under color of state law, was deliberately indifferent to decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to 42 U.S.C. § 1983.

117. To the extent defendant Thomas Marello was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

**FIFTH CLAIM FOR RELIEF**

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights
By Defendant Mark Wissner*

118.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

119.    As alleged throughout the Second Amended Complaint, defendant Mark Wissner was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

120.    As alleged throughout the Second Amended Complaint, defendant Mark Wissner deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

121.    Defendant Mark Wissner and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

122.    The conduct of defendant Mark Wissner alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

123.    Defendant Mark Wissner failed to intervene to protect decedent's First, Fourth,

Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

124. As alleged throughout the Second Amended Complaint, defendant Mark Wissner conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

125. Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, the defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

126. Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

127. Because defendant Mark Wissner, while acting under color of state law, was deliberately indifferent to decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to 42 U.S.C. § 1983.

128. To the extent defendant Mark Wissner was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

### SIXTH CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights
By Defendant Brian Menton*

129. Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

130.    As alleged throughout the Second Amended Complaint, defendant Brian Menton was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

131.    As alleged throughout the Second Amended Complaint, defendant Brian Menton deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

132.    Defendant Brian Menton and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

133.    The conduct of defendant Brian Menton alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

134.    Defendant Brian Menton failed to intervene to protect decedent's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

135.    As alleged throughout the Second Amended Complaint, defendant Brian Menton conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of

the United States Constitution.

136.    Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, the defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

137.    Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

138.    Because defendant Brian Menton, while acting under color of state law, was deliberately indifferent to decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to 42 U.S.C. § 1983.

139.    To the extent defendant Brian Menton was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

**SEVENTH CLAIM FOR RELIEF**

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights*
*By Defendant Terence Malone*
_____

140.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

141.    As alleged throughout the Second Amended Complaint, defendant Terence Malone was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

142.    As alleged throughout the Second Amended Complaint, defendant Terence Malone

deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

143.    Defendant Terence Malone and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

144.    The conduct of defendant Terence Malone alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

145.    Defendant Terence Malone failed to intervene to protect decedent's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

146.    As alleged throughout the Second Amended Complaint, defendant Terence Malone conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

147.    Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, the defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

148.    Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

149.    Because defendant Terence Malone, while acting under color of state law, was deliberately indifferent to decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to 42 U.S.C. § 1983.

150.    To the extent defendant Terence Malone was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## EIGHTH CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights By Defendant Joseph Barosa*

151.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

152.    As alleged throughout the Second Amended Complaint, defendant Joseph Barosa was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

153.    As alleged throughout the Second Amended Complaint, defendant Joseph Barosa deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

154.    Defendant Joseph Barosa and the defendant FBI agents and local law enforcement

officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

155.    The conduct of defendant Joseph Barosa alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

156.    Defendant Joseph Barosa failed to intervene to protect decedent's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

157.    As alleged throughout the Second Amended Complaint, defendant Joseph Barosa conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

158.    Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, the defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

159.    Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

160.    Because defendant Joseph Barosa, while acting under color of state law, was deliberately indifferent to decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to 42 U.S.C. § 1983.

161. To the extent defendant Joseph Barosa was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## NINTH CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights By Defendant Michael McGee*

_____

162. Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

163. As alleged throughout the Second Amended Complaint, defendant Michael McGee was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

164. As alleged throughout the Second Amended Complaint, defendant Michael McGee deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

165. Defendant Michael McGee and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

166. The conduct of defendant Michael McGee alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental

fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

167.    Defendant Michael McGee failed to intervene to protect decedent's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

168.    As alleged throughout the Second Amended Complaint, defendant Michael McGee conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

169.    Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, the defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

170.    Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

171.    Because defendant Michael McGee, while acting under color of state law, was deliberately indifferent to decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to 42 U.S.C. § 1983.

172.    To the extent defendant Michael McGee was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## TENTH CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights By Defendant Brendan Kenney*

173. Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

174. As alleged throughout the Second Amended Complaint, defendant Brendan Kenney was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

175. As alleged throughout the Second Amended Complaint, defendant Brendan Kenney deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

176. Defendant Brendan Kenney and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

177. The conduct of defendant Brendan Kenney alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

178. Defendant Brendan Kenney failed to intervene to protect decedent's First, Fourth,

Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

179.    As alleged throughout the Second Amended Complaint, defendant Brendan Kenney conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

180.    Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, the defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

181.    Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

182.    Because defendant Timothy Cooper was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## ELEVENTH CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights
By Defendant Andrew Fisher*

_____

183.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

184.    As alleged throughout the Second Amended Complaint, defendant Andrew Fisher was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States

Constitution.

185.    As alleged throughout the Second Amended Complaint, defendant Andrew Fisher deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

186.    Defendant Andrew Fisher and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

187.    The conduct of defendant Andrew Fisher alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

188.    Defendant Andrew Fisher failed to intervene to protect decedent's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

189.    As alleged throughout the Second Amended Complaint, defendant Andrew Fisher conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

190.    Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, the defendant filing false or misleading reports regarding the

circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

191.   Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

192.   Because defendant Andrew Fisher was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## TWELFTH CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights By Defendant Daniel Conlon*

_____

193.   Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

194.   As alleged throughout the Second Amended Complaint, defendant Daniel Conlon was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

195.   As alleged throughout the Second Amended Complaint, defendant Daniel Conlon deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

196.   Defendant Daniel Conlon and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then

did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

197.    The conduct of defendant Daniel Conlon alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

198.    Defendant Daniel Conlon failed to intervene to protect decedent's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

199.    As alleged throughout the Second Amended Complaint, defendant Daniel Conlon conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

200.    Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, the defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

201.    Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

202.    Because defendant Daniel Conlon was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

## THIRTEENTH CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights
By Defendant Daniel McKenna*

203.  Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

204.  As alleged throughout the Second Amended Complaint, defendant Daniel McKenna was deliberately indifferent to and did deprive the decedent of rights, privileges and immunities secured by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

205.  As alleged throughout the Second Amended Complaint, defendant Daniel McKenna deprived the decedent of adequate medical attention and life and liberty without due process of law; subjected decedent to unlawful search and seizure; inflicted cruel and unusual punishment including excessive and lethal force; and subjected decedent to unnecessary and wanton infliction of pain.

206.  Defendant Daniel McKenna and the defendant FBI agents and local law enforcement officers did fire dozens of ammunition rounds into decedent's vehicle and at decedent, and then did delay providing decedent emergency medical care. Decedent's person was struck by at least ten (10) rounds of ammunition.

207.  The conduct of defendant Daniel McKenna alleged herein was, *inter alia*, criminally reckless; grossly incompetent, disproportionate and excessive; utterly intolerable to fundamental fairness; a violation of decedent's due process and constitutional rights; and resulted in the infliction of cruel and unusual punishment and harm upon decedent.

208.  Defendant Daniel McKenna failed to intervene to protect decedent's First, Fourth,

Fifth, Eighth, and Fourteenth Amendment rights from being violated by the FBI agents and local law enforcement officers at the scene.

209. As alleged throughout the Second Amended Complaint, defendant Daniel McKenna conspired together with the co-defendant FBI agents and local law enforcement officers to deny decedent's rights secured under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

210. Upon information and belief, said conspiracy continued after decedent was shot and included, but was not limited to, the defendant filing false or misleading reports regarding the circumstances of decedent's stop, seizure and death, the use of excessive force, and the improper use of firearms.

211. Said conspiracy was designed to prevent the decedent's family and public from learning the true circumstances regarding decedent's death and constituted a cover-up.

212. To the extent defendant Daniel McKenna was acting in the color of federal authority at the time he violated decedent's constitutionally protected rights, Plaintiffs seek damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

### FOURTEENTH CLAIM FOR RELIEF

*Violation of Rights Secured Under the Constitution and Conspiracy to Violate Said Rights
By City of Yonkers*

213. Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

214. The City of Yonkers is endowed and bestowed with policy-making and decision-making authority of YPD.

215. In August 2007, the United States Department of Justice ("DOJ") initiated an

investigation of an alleged pattern or practice of excessive force, discriminatory policing, and improper stop and search practices by YPD officers that deprive persons of rights, privileges, or immunities secured or protected by the Constitution and laws of the United States.

216. On or about June 9, 2009, the DOJ sent a letter to defendant City of Yonkers identifying specific concerns the DOJ had based upon its extensive investigation and review of records to that point, most notably related to YPD's practices and policies in the areas of use of force, citizen complaints, investigations, supervisory oversight, and training.

217. In recent years, the City of Yonkers and its various officers have been the subject of numerous lawsuits involving the unchecked misconduct of YPD officers.

218. In an April 2014 news article, it was disclosed that defendant City of Yonkers "paid nearly $3 million to litigants in police misconduct cases from 2000 to 2009, according to figures provided to The Journal News following a Freedom of Information Law request. That amounts to about $500 per officer per year on legal matters related to misconduct cases, though *police officials have said that amount is low*, and the figures appear to bear that out." *See,* https://www.lohud.com/story/news/local/westchester/yonkers/2014/04/05/police-misconduct-cases-cost-yonkers-almost-m-years/7368907 (emphasis supplied). Specifically, according to the article, "Yonkers police paid $2,995,523 to settle 48 cases of police misconduct and brutality from 2000 to 2009." That is an average of $62,406.73 per settlement.

219. In another news article published that same day, it was disclosed that despite two (2) YPD officers having been named in fourteen (14) misconduct lawsuits, they were considered by the Yonkers Police Benevolent Association to be "excellent, excellent cops" and were praised by defendant City of Yonkers for having won awards for their police work. *See,* https://www.lohud.com/story/news/local/westchester/yonkers/2014/04/05/yonkers-cops-

namedmisconduct-lawsuits/7369049/.

220.    Thereafter, by Agreement between the DOJ and the City of Yonkers dated November 14, 2016, effective January 2, 2017 (11 months before the subject incident), defendant City of Yonkers was required to maintain use of force policies that *inter alia*:

    a. Incorporate a use-of-force process that relates the force options available to officers to the types of conduct by individuals that would justify the use of such force, and that teaches uses of other measures where appropriate, such as disengagement, area containment, surveillance, waiting out a suspect, summoning reinforcements or calling in specialized units that requires the use of a verbal warning before the use of force, when possible;

    b. Require officers to use only the force that is reasonable in light of the resistance encountered and to de-escalate force immediately as resistance decreases;

    c. Require that, to the extent consistent with the safety of the officer and the public, individuals should be allowed to submit to arrest before force is used; and

    d. Recommend that available less lethal alternatives be used by patrol officers.

221.    Despite the Agreement, prior to and on December 15, 2017, the City of Yonkers and YPD continued to maintain policies, procedures and protocols with deliberate indifference to and/or reckless disregard for the rights of the public in general and decedent in particular.

222.    Despite the Agreement, prior to and on December 15, 2017, the City of Yonkers and YPD acted with reckless disregard and deliberate indifference in their supervision and training of YPD officers, including but not limited to the defendant officers.

223.    Despite the Agreement and highly-publicized lawsuits alleging brutality and misconduct by YPD officers, the City of Yonkers and YPD, prior to and on December 15, 2017, provided their officers, including the non-federal defendant officers, with grossly inadequate supervision and training; failed to properly train YPD officers so that they knew how and why to

use only the force that is reasonable in light of the resistance encountered; failed to properly train YPD officers so that they knew how and why to de-escalate situations to avoid using force; failed to properly train YPD officers so that they knew how and why to use other tactics before using force such as verbal warnings, disengagement, containment, surveillance, waiting out a suspect, and summoning reinforcements; failed to properly train YPD officers so that they knew how and when to discharge their firearms at persons and vehicles; failed to properly train YPD officers so that they knew how and when to use critical force; failed to properly train YPD officers so that they knew how and when to use deadly force; failed to properly train YPD officers so that they knew how and when they had probable cause to arrest; failed to properly train YPD officers so that they knew how and when they had reasonable suspicion to stop and search; failed to properly train YPD officers so that they knew how and when to stop a vehicle; failed to properly train YPD so that they knew how and why to safely effect an arrest; failed to supervise, discipline and counsel YPD officers; failed to review each of its policies, procedures and protocols 180 days after implementation and annually thereafter; failed to ensure that every YPD officer and employee had ready access to current versions of all policies that apply to the officer's or employee's position; failed to ensure that YPD officers conduct investigatory stop or detentions only where the officer has reasonable suspicion; failed to ensure that YPD officers effect arrests only where the officer has probable cause pursuant to N.Y.C.P.L. § 140.10; failed to ensure that YPD officers were adequately trained to provide immediate medical care for injured suspects following the use of critical and/or deadly force; failed to ensure that YPD officers were adequately trained to request immediate medical care for injured suspects following the use of critical and/or deadly force; failed to have a centralized tracking system and risk management system in place that enables YPD to collect data in order to oversee and monitor YPD officers' stops and searches, arrests, uses of

force, uses of deadly force, firearm discharges, disciplinary and criminal proceedings initiated against the officer, and citizen complaints; failed to have an investigation system in place that fully, faithfully and promptly investigated allegations of misconduct by YPD officers and applied an appropriate legal standard; failed to refer allegations of "substantiated" criminal misconduct by YPD officers to the district attorney and/or other appropriate agency for review; failed to provide adequate Academy training to new officers and field-training/in-service training to existing officers as to changes in policies and procedures; and failed to provide adequate supervisory training to supervisory officers regarding *inter alia* training subordinate officers on use-of-force and stop-and-search, effecting arrests, firearm discharge, deadly force, reviewing subordinate officers' arrest and other reports, and conducting use of force and misconduct investigations.

224. The non-federal defendant officers were part of an entrenched culture of violence and deliberate indifference to medical needs, of which defendant City of Yonkers was aware.

225. Upon information and belief, the non-federal defendant officers have been involved in similar excessive use of force incidents prior to December 15, 2017, for which no corrective action had been taken against them by the City of Yonkers.

226. Defendant City of Yonkers' conduct violates 42 U.S.C. § 1983 in that the subject incident was consistent with a persistent pattern or practice of systematic deprivation of well-established constitutional rights.

227. Myriad senseless incidents of police brutality involving YPD officers have occurred in the recent past and yet defendant City of Yonkers remained deliberately indifferent thereto, taking little, if any corrective action.

228. It is clear from these prior similar incidents, that the misconduct and abuses alleged herein were part of a widespread practice of indifference to well-established constitutional rights

and constitute a custom or usage of which defendant City of Yonkers was, or should have been, aware.

229.    As set forth herein, defendant City of Yonkers has had, and continues to have, a custom and practice of deliberate delay and avoidance in investigating allegations of abuse and other misconduct by YPD and medical personnel, to the direct detriment of decedent.

230.    Prior to December 15, 2017, defendant City of Yonkers maintained customs and practices, policies and procedures, and rules that were the moving force behind the deprivation of decedent's rights as stated.

231.    The failures of YPD supervisory officers to take any action to curb the abuses by their subordinate personnel, despite having received extensive information concerning the pattern of incidents involving violence and denial of medical care by the non-federal defendant officers was the moving force behind the constitutional violations suffered by decedent.

232.    Defendant City of Yonkers and YPD supervisory officers not only overlooked the type of oppressive, forceful acts alleged herein, but implicitly encouraged it by their longstanding history of tolerating the type of abusive practices alleged herein.

233.    By virtue of the foregoing, defendant City of Yonkers was deliberately indifferent and deprived decedent of his rights secured by the Constitution of the United States of America and has damaged him thereby.

234.    As a direct and proximate result of the foregoing, Plaintiffs suffered the violations, injuries and damages described above in an amount to be determined at trial.

## STATE LAW CLAIMS FOR RELIEF

235.    This action is commenced, including all applicable tolls, within the applicable statute of limitations.

236.    This action falls within one or more exceptions set forth in N.Y. C.P.L.R. § 1602.

### FIFTEENTH CLAIM FOR RELIEF

*Assault and Battery*

237.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

238.    As alleged throughout the Second Amended Complaint, the defendant FBI agents and local law enforcement officers used excessive force upon decedent. The use of such force was not justified or warranted under the circumstances and constituted unreasonable and unnecessary force.

239.    The use of such force caused decedent to suffer and experience fear and imminent apprehension of physical harm, pain and suffering, serious physical injuries, severe emotional distress, and death.

240.    The actions of the defendant FBI agents and local law enforcement officers were intentional.

241.    The actions of the defendant FBI agents and local law enforcement officers constituted assault and battery upon decedent's person.

242.    As a direct result of the defendant FBI agents and local law enforcement officers' conduct, the decedent suffered serious harm and was killed.

243.    Defendant City of Yonkers is responsible under *respondeat superior* for the actions and omissions of defendants Cooper, Braig, Walencik, Marello, Wissner, and Menton as same were committed within the scope of their employment as YPD police officers.

244.    As a direct and proximate result of the foregoing, Plaintiffs were injured and damaged in an amount to be determined at trial.

## SIXTEENTH CLAIM FOR RELIEF

*Negligence*

245.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

246.    The defendant local law enforcement officers were negligent in the instance in that they did not have lawful cause, justification, or authority to use force on decedent let alone lethal force. The defendant local law enforcement officers did not have reasonable fear that their own safety was in jeopardy at the time excessive and lethal force was used on decedent.

247.    The defendant local law enforcement officers were negligent in the instance in that they failed to identify themselves as law enforcement officers; failed to activate the emergency lights and sirens in their marked and/or unmarked vehicles prior to and upon engaging decedent; engaged in conduct that unreasonably jeopardized the life of decedent; failed to develop and implement a tactical plan that was reasonable for the situation presented; failed to take reasonable precautions; and acted without caution or care for the safety of decedent and/or the outcome of their actions.

248.    The defendant local law enforcement officers were grossly negligent, negligent, careless, reckless, inattentive, and/or otherwise proceeded in an unreasonably dangerous manner without caution or care for the safety and civil rights of decedent; in failing to give notice or warning of the impending occurrence to the decedent; in failing to obey the protocols, rules, standards, patrol guide, and training materials governing the aforesaid incident; in failing to take cognizance of a dangerous and/or escalating situation and using non-lethal tactics to mitigate the situation and potential for harm; in failing to deescalate the situation when opportunity allowed; in failing to take reasonable precautions to maintain and preserve the health and safety of the

decedent; and in failing to provide decedent with access to timely and appropriate medical attention.

249.    Defendant City of Yonkers' police officers and medical personnel, acting within the scope of their employment, negligently discharged their duties and thereby caused decedent to sustain the aforementioned injuries and deprivations.

250.    The negligent and wrongful acts and omissions by defendant City of Yonkers' police officers and medical personal include, but are not limited to, the excessive use of force in apprehending and arresting decedent, the denial and/or delay of timely and appropriate medical care to decedent, and the failure of YPD officers and medical personnel to take reasonable steps to intervene to prevent same despite having ample opportunity to do so.

251.    Defendant City of Yonkers was negligent, careless, and reckless in the hiring, screening, training, retention, and supervision of the involved YPD officers and medical personnel in that said employees lacked the character, mental capacity, experience, ability, maturity, sensibility and/or intelligence to be and remain employed by the City of Yonkers; in failing to exercise due care and caution in its hiring, screening, training, retention, and supervision practices; in failing to suspend and/or terminate employees when such action was either proper or required; and its failure to enforce the laws of the United States of America, the State of New York and the Charter, rules and regulations of the City of Yonkers is evidence of the reckless lack of cautious regard for the rights of the public in general and decedent in particular and exhibited a lack of that degree of due care which prudent and reasonable individuals would show.

252.    Defendant City of Yonkers knew or should have known in the exercise of reasonable care the propensities of its involved employees to engage in the wrongful conduct alleged herein.

253.     The mistreatment and abuse of the decedent set forth above was the reasonably foreseeable consequence of the defendant City of Yonkers' negligent conduct.

254.     Due to the negligence of defendant local law enforcement officers, the decedent suffered serious harm and was killed.

255.     Defendant City of Yonkers is responsible under *respondeat superior* for the actions and omissions of its police officers and medical personnel as the acts were committed within the scope of their employment.

256.     By the actions described above, each and every local law enforcement officer jointly and severally committed the wrongful acts and omissions alleged herein against decedent, which are tortious under the laws of the State of New York.

257.     As a direct and proximate result of the foregoing, Plaintiffs were injured and damaged in an amount to be determined at trial.

## SEVENTEENTH CLAIM FOR RELIEF

*Wrongful Death*

_____

258.     Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

259.     Defendant City of Yonkers and the defendant local law enforcement officers, acting within the scope of their employment, caused and/or contributed to the wrongful and premature death of decedent.

260.     Defendant City of Yonkers is responsible for its employees' actions and omissions taken in the scope of their employment as employees, police officers, and medical personnel.

261.     As a direct and proximate result of the foregoing, Plaintiffs were injured and damaged in an amount to be determined at trial.

**EIGHTEENTH CLAIM FOR RELIEF**

*Conscious Pain and Suffering*

_____

262.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

263.    The defendant local law enforcement officers used deadly force against decedent. The use of such force was not justified or warranted under the circumstances and constituted unreasonable and unnecessary force.

264.    Upon information and belief, the use of such force did not immediately cause decedent's death. As a result, he suffered and experienced a fear of impending death, severe emotional distress, and conscious pain and suffering. This suffering was exacerbated by the excessive uses of force against decedent when he was shot at least ten (10) times.

265.    The suffering also includes the moments decedent was grasping for breath and realization he was going to expire.

266.    Defendant City of Yonkers is responsible for its employees' actions and omissions taken in the scope of their employment as employees, police officers, and medical personnel.

267.    As a direct and proximate result of the foregoing, Plaintiffs were injured and damaged in an amount to be determined at trial.

**NINETEENTH CLAIM FOR RELIEF**

*Respondeat Superior*

_____

268.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

269.    At all times pertinent hereto, the local law enforcement officers, supervisory

personnel, and medical personnel were acting within the scope of their employment as police officers and/or medical personnel for the defendant City of Yonkers and other jurisdictions.

270.    The employers of the defendant local law enforcement officers, supervisory personnel, and medical personnel are liable under the doctrine of *respondeat superior* for the intentional and negligent torts of these employees, which were committed within the scope of their employment.

271.    As a direct and proximate result of the foregoing, Plaintiffs were injured and damaged in an amount to be determined at trial.

### TWENTIETH CLAIM FOR RELIEF

*Loss of Love, Support, and Familial Relationships*

_____

272.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

273.    Plaintiff Robert Campbell is the father of decedent Erick Campbell.

274.    Plaintiff Aida Campbell is the mother of decedent Erick Campbell.

275.    Plaintiff Eric Campbell is the son of decedent Erick Campbell.

276.    Due to the acts and omissions of the defendant local law enforcement officers and medical personnel, plaintiffs Robert Campbell and Aida Campbell have been deprived of the love, support and familial relationships of their son, decedent Erick Campbell.

277.    Due to the acts and omissions of the defendant local law enforcement officers and medical personnel, plaintiff Eric Campbell has been deprived of the love, support, familial relationships, and parental guidance of his father, decedent Erick Campbell.

278.    Defendant City of Yonkers is responsible under the doctrine of *respondeat superior* for its employees' actions and omissions taken in the scope of their employment as employees,

police officers, and medical personnel.

279.    As a direct and proximate result of the foregoing, Plaintiffs suffered the violations, injuries and damages described above in an amount to be determined at trial.

## TWENTY-FIRST CLAIM FOR RELIEF

*Negligent and Intentional Infliction of Emotional Distress*
_____

280.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

281.    As set forth above, the defendant local law enforcement officers and medical personnel's aforesaid acts and omissions were intentional, malicious and excessive, and served no reasonable or legitimate medical or penological interest.

282.    As set forth above, the defendant local law enforcement officers and medical personnel's aforesaid acts and omissions were negligent and served no reasonable or legitimate medical or penological interest.

283.    Due to the aforesaid acts of the defendant local law enforcement officers and medical personnel, Plaintiffs suffered extreme emotional distress.

284.    The intentional, reckless and/or negligent acts of the defendant local law enforcement officers and medical personnel constituted misconduct of an egregious and outrageous nature that exceeds all bounds usually tolerated by society.

285.    Defendant City of Yonkers is liable under the doctrine of *respondeat superior* for the intentional and negligent acts and omissions of its employees committed within the scope of their employment.

286.    As a direct and proximate result of the foregoing, Plaintiffs suffered severe psychological and emotional trauma in an amount not to be determined at trial.

## TWENTY-SECOND CLAIM FOR RELIEF

*Punitive Damages*

_____

287.    Plaintiffs repeat and re-allege each and every allegation set forth in the prior paragraphs as if fully set forth herein.

288.    The acts and omissions of the defendant FBI agents and local law enforcement officers were willful, wanton, malicious, and oppressive and were motivated by a desire to harm decedent without regard for his life and well-being and were based on a lack of concern and ill-will towards him. Such acts therefore warrant an award of punitive damages.

289.    Defendant City of Yonkers is responsible for the actions and omissions of its employees as complained herein under the doctrine of *respondeat superior*.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues in this matter.

## PRAYER FOR RELIEF

Plaintiffs request compensatory damages against all defendants in an amount to be determined at trial, punitive damages against each non-municipal defendant in an amount to be determined at trial, reasonable attorney's fees, costs and disbursements pursuant to law, and such other and further relief as this Court deems just and proper.

Dated:  Brooklyn, New York
       November 4, 2019

**HELD & HINES, L.L.P.**
*Attorneys for Plaintiffs*
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700
phines@heldhines.com

*/s/ Philip Hines*_____
By: Philip M. Hines, Esq.