UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ROBERT CAMPBELL, individually and as          :
Administrator of the Estate of Erick Campbell;    :
AIDA CAMPBELL; and ERIC CAMPBELL,       :
                Plaintiffs,        :
v.                                                                  :
                                    :
CITY OF YONKERS; POLICE OFFICER          :
TIMOTHY COOPER; POLICE OFFICER          :     **OPINION AND ORDER**
THOMAS BRAIG; POLICE OFFICER            :
ADAM WALENCIK; DETECTIVE THOMAS     :
MARELLO; SERGEANT MARK WISSNER;      :
DETECTIVE BRIAN MENTON;                    :     19 CV 2117 (VB)
DETECTIVE TERENCE MALONE;                 :
SERGEANT JOSEPH BAROSA;                     :
DETECTIVE MICHAEL MCGEE; AGENT         :
BRENDAN KENNEY; AGENT ANDREW          :
FISHER; AGENT DANIEL CONLON; and       :
AGENT DANIEL MCKENNA,                         :
                Defendants.          :
--------------------------------------------------------------x
ROBERT CAMPBELL, individually and as          :
Administrator of the Estate of Erick Campbell;    :
AIDA CAMPBELL; and ERIC CAMPBELL,       :
                Plaintiffs,        :
v.                                                                  :     19 CV 9444 (VB)
                                    :
UNITED STATES OF AMERICA,                    :
                Defendant.          :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiffs Robert Campbell, individually and as Administrator of the Estate of Erick

Campbell, and Aida Campbell and Eric Campbell,[1] bring these two consolidated actions pursuant

to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. ("FTCA"), Bivens v. Six Unknown

Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and 42 U.S.C. § 1983, against

---

[1]     Robert and Aida Campbell are the parents of Erick Campbell.  Eric Campbell is the son
of Erick Campbell.

defendants the United States of America (the "United States"), Federal Bureau of Investigation ("FBI") Special Agents Brendan Kenney, Andrew Fisher, Daniel Conlon, and Daniel McKenna (together, the "FBI defendants"), the City of Yonkers ("Yonkers"), Yonkers Police Department ("YPD") Officers ("P.O.s") Timothy Cooper, Thomas Braig, and Adam Walencik, YPD Sergeant ("Sgt.") Mark Wissner, YPD Detectives ("Dets.") Thomas Marello and Brian Menton, Westchester County Police Department ("WPD") Det. Terence Malone, and Tarrytown Police Department ("TPD") Det. Michael McGee and Sgt. Joseph Barosa.  Plaintiffs allege numerous federal and state law claims against defendants in connection with the death of Erick Campbell ("decedent") on December 15, 2017.

Now pending are motions to dismiss filed by the United States (19 Civ. 9444 Doc. #17), the FBI defendants (19 Civ. 2117 Doc. #84), and Det. Malone (19 Civ. 2117 Doc. #90).[2]

For the following reasons, the motions are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the operative complaints, and draws all reasonable inferences in plaintiffs' favor, as summarized below.[3]

---

[2]  On November 18, 2019, Det. McGee and Sgt. Barosa answered plaintiffs' second amended complaint (19 Civ. 2117 Doc. #74), as did the City of Yonkers, Dets. Marello and Menton, Sgt. Wissner, and P.O.s Cooper, Braig, and Walencik.  (19 Civ. 2117 Doc #75).

[3]  The operative pleadings in these consolidated actions are plaintiffs' October 11, 2019, complaint filed against the United States (19 Civ. 9444 Doc. 1 ("Compl.")), and plaintiffs' November 4, 2019, second amended complaint, filed against all other named defendants (19 Civ. 2117 Doc. #67 ("SAC")).

I.      The Task Force

Plaintiffs allege that prior to December 15, 2017, the FBI partnered with local law

enforcement agencies, including the YPD, WPD, and TPD, to form a task force of federal and

local law enforcement officials and initiate "a series of law enforcement actions focused on

apprehending individual(s) suspected of bank robberies in Westchester County."  (SAC ¶ 28).

To that end, plaintiffs allege the FBI organized and planned a surveillance operation for

December 15, 2017, to be carried out by the named individual defendants.[4]  Plaintiffs claim the

FBI defendants "designed and planned the subject operation, initiated it, directed the assignments

for it, decided on the tactical procedures, and were responsible for the conduct of the operation,

including . . . the training, supervision, and coordination of all law enforcement involved."  (Id. ¶

29).

Plaintiffs further allege the United States, through the FBI, "decided to partner with [the

YPD] despite that fact that defendant United States was aware of serious systemic deficiencies in

YPD's operations, including but not limited to deficiencies in YPD officers' use of excessive and

deadly force, that had persisted for over a decade prior to 2017."  (Compl. ¶ 21).

II.     The Surveillance Operation

In the afternoon of December 15, 2017, the task force was positioned at the intersection

of Aqueduct Avenue and Delano Avenue, in Yonkers, to conduct surveillance on a vehicle that

allegedly had been reported stolen and used in a bank robbery.

According to plaintiffs, at about 3:48 p.m., Det. Marello reported by radio to the task

force that a man—later identified as decedent—was approaching the subject vehicle.  Thereafter,

one of the individual defendants, whom plaintiffs do not identify, allegedly reported over radio

---

[4]      The individual defendants are collectively referred to herein as the "task force."

that he observed decedent enter the subject vehicle, place a duffle bag into the vehicle, and then

exit the vehicle to clear snow from its back window.  Decedent allegedly re-entered the vehicle

after clearing the snow, and then, following an unknown amount of time, again exited the vehicle

to clear more snow, and again re-entered the vehicle.  Plaintiffs claim decedent was not known to

the defendants at this time, nor was he suspected of having committed a bank robbery.

Plaintiffs allege that after decedent entered the vehicle the third time, Agent Kenney

"belatedly, yet hastily," ordered the task force to move in on the vehicle to arrest decedent.

(SAC ¶ 36).  According to plaintiffs, Agent Kenney pulled his unmarked vehicle within a few

inches of the subject vehicle's rear bumper, while Det. Malone converged on the vehicle from

the front.  Plaintiffs claim written statements of the task force members are inconsistent as to

whether Det. Malone approached the vehicle on foot or in a vehicle.

After Agent Kenney pulled his unmarked vehicle within inches of the subject vehicle, he

allegedly exited his own vehicle and purportedly yelled:  "Show me your hands."  (Compl. ¶ 35).

According to plaintiffs, Agent Kenney and Det. Malone did not identify themselves to decedent

as law enforcement, nor did they activate any vehicle lights or sirens.

Plaintiffs further allege Agent McKenna approached the subject vehicle from an

unmarked law enforcement vehicle, as did Agents Fisher and Conlon, Det. Menton, P.O.s

Cooper and Braig, Sgt. Barosa, and Det. McGee.  Plaintiffs allege none of these defendants

activated vehicle lights or sirens, or identified himself to decedent as law enforcement.  Plaintiffs

also claim none of the individual defendants was in uniform during the surveillance operation, or

drove a marked law enforcement vehicle.  Accordingly, plaintiffs assert none of the individual

defendants was easily recognizable to decedent as law enforcement.

Plaintiffs claim that following the individual defendants' approach, "decedent attempted

to drive away as he was in fear for his life and safety, not realizing that the people approaching

4

him with guns drawn were law enforcement."  (SAC ¶ 41).  Plaintiffs allege P.O.s Cooper and

Braig, who together were in one unmarked vehicle, then rammed the driver's side of the subject

vehicle, and Agent Kenney returned to his own unmarked vehicle and rammed the subject

vehicle as well.

     Plaintiffs further allege Agent Kenney again exited his vehicle, and purportedly heard

someone yell:  "[G]un, gun, gun, he has a gun, he is raising his gun up."  (SAC ¶ 43).  Plaintiffs

claim defendants' investigatory statements "are inconsistent as to [who] shouted that decedent

was holding a gun or whether decedent was actually holding a gun."  (Compl. ¶ 42 n.4).

Moreover, plaintiffs allege that "[a]t no time did decedent fire a gun at the defendants" or "aim a

gun at the defendants."  (SAC ¶¶ 46, 47).

     According to plaintiffs, Agent Kenney then heard a gunshot, believed to be fired by P.O.

Cooper, followed by a series of other gunshots, and observed the subject vehicle's rear window

shatter.  Inferring decedent had fired upon Det. Malone, Agent Kenney allegedly then fired two

rounds at decedent.

     Plaintiffs assert twenty-seven rounds of ammunition were fired at decedent:  sixteen from

P.O. Cooper; three from P.O. Braig; five from Det. Marello; one from Sgt. Wissner; and two

from Agent Kenney.  It is alleged decedent was hit approximately ten times, and sustained six

penetrating gunshot wounds, four perforating gunshot wounds, and four "exit wounds to his left

armpit, left shoulder blade, left chest, mid-left back, left medial back, left hip, upper left back,

mid-back, left elbow, and left forearm."  (SAC ¶ 45).

     When the gunfire ceased, plaintiffs allege none of the individual defendants rendered

timely medical assistance to decedent.  Indeed, plaintiffs allege that "despite decedent being

critically injured, but still breathing, the defendant FBI agents and local law enforcement officers

first searched the subject vehicle and duffle bag," "removed decedent from the vehicle," and then

"initiated a search of decedent's pants for weapons and then his wallet for identification."  (SAC ¶ 48).  According to plaintiffs, "only after finding decedent's wallet and identification did the [defendants] begin CPR and request an ambulance."  (Id.).

Plaintiffs do not allege at what time an ambulance arrived or how long it took to transport decedent to a hospital.  They do allege, however, that at 4:50 p.m., on December 15, 2017, decedent was declared dead at Montefiore Medical Center in the Bronx.

III.   Claims Against the Moving Defendants

Plaintiffs claim each of the individual defendants was "personally involved in the wrongful acts and omissions alleged . . . , including but not limited to the apprehension of decedent, shooting of decedent, causing the death of decedent, and/or denial and/or delay of access to emergency medical care."  (SAC ¶ 56).  Moreover, plaintiffs allege none of the defendants "timely intervened to provide adequate medical attention to decedent when the seriousness of his condition was or should have been readily apparent."  (Id.).

Relevant here, plaintiffs plead the following claims against the United States pursuant to the FTCA:  (i) negligence; (ii) assault and battery;  (iii) wrongful death; (iv) conscious pain and suffering; (v) loss of love, support, and family; and (vi) negligent infliction of emotional distress. Plaintiffs plead Bivens claims against the FBI defendants, and Section 1983 claims against Det. Malone, for alleged violations of decedent's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights, and also for conspiracy to deny decedent of such rights.  Plaintiffs further plead state law assault and battery claims against the FBI defendants and Det. Malone, and also (i) wrongful death, (ii) conscious pain and suffering, (iii) loss of love, support, and family, and (iv) intentional and negligent infliction of emotional distress claims against Det. Malone.

**DISCUSSION**

I.     <u>Legal Standards</u>

    A.     <u>Rule 12(b)(1)</u>

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  <u>Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont</u>, 565 F.3d 56, 62 (2d Cir. 2009).[5]  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  <u>Nike, Inc. v. Already, LLC</u>, 663 F.3d 89, 94 (2d Cir. 2011).  A court lacks the judicial power to hear a party's claims when the party does not have standing.  <u>Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n</u>, 747 F.3d 44, 48 (2d Cir. 2014).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint."  <u>Conyers v. Rossides</u>, 558 F.3d 137, 143 (2d Cir. 2009).  "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn."  <u>Buday v. N.Y. Yankees P'ship</u>, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).

When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court should resolve the Rule 12(b)(1) challenge first.  <u>Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n</u>, 896 F.2d 674, 678 (2d Cir. 1990).

    B.     <u>Rule 12(b)(6)</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v.

---

[5]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.    Subject Matter Jurisdiction

The United States argues the Court lacks subject matter jurisdiction over any claims asserted against the United States inasmuch as those claims arise from the alleged conduct of Sgt. Wissner and P.O.s Cooper and Braig, because those defendants were not "employees" under the FTCA at any relevant time.

At this early stage of the proceedings, the Court disagrees.

A.    Legal Standard

"The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment."  United States v. Orleans, 425 U.S. 807, 813 (1976).  The FTCA "defines Government employees to include officers and employees of any federal agency."  Id. at

813–14.  "Whether a person is a government employee . . . is a question of federal law."  Leone v. United States, 910 F.2d 46, 49 (2d Cir. 1990).  "For the purposes of the FTCA, the common law of torts and agency defines the distinction between an independent contractor (for whose torts the Government is not responsible) and an employee, servant or agent (for whose torts the Government is responsible)."  O'Neil v. United States, 927 F. Supp. 599, 604 (E.D.N.Y. 1996).

To plausibly allege an individual was a federal employee for purposes of the FTCA, a plaintiff must meet the "strict control test" by demonstrating the federal government maintained control over and "manage[d] the details of" the individual's work, or "supervise[d] him in his daily duties."  Leone v. United States, 910 F.2d at 50.  In other words, it is not enough for the federal government to have acted "generally as an overseer" to establish the type of control over an individual required to sustain a FTCA claim.  See id.

B.    Application

Here, the United States argues Sgt. Wissner and P.O.s Cooper and Braig were not deputized by the FBI, not assigned positions on the task force, and that the FBI did not manage the details of how and when those defendants performed their work assignments.  Indeed, in an affidavit submitted on behalf of the United States, Acting Assistant Special Agent Kevin J. Ponder states that a memorandum of understanding between the FBI and local partner agencies governs the administrative and investigative functions of the task force and those individuals assigned to same, and that the above-referenced defendants "were not assigned" to the task force. (19 Civ. 9444 Doc. #19 ("Ponder Decl.") ¶ 10).

The terms of such memorandum are not before the Court.  On the contrary, plaintiffs plausibly allege Sgt. Wissner and P.O.s Cooper and Braig "may have been acting as agents of and/or on behalf of the FBI" (Compl. ¶ 25), which plaintiffs allege "arranged and initiated" the subject surveillance operation (id. ¶ 28), and which controlled, directed, and was responsible for,

9

the December 15, 2017, operation.  (Id. ¶ 29).  In other words, plaintiffs allege that on December 15, 2017, the FBI maintained control over, managed, and directed the actions of all law enforcement personnel involved in the surveillance operation.  Indeed, plaintiffs allege Agent Kenney spearheaded the operation and instructed the other individual defendants when to converge on the subject vehicle.

It well may be established, at some later time and based on admissible evidence, that certain defendants' conduct on December 15, 2017, cannot, as a matter of law, be attributed to the United States.  However, the Court declines to dismiss at this time plaintiffs' FTCA claims inasmuch as they arise from the alleged conduct of Sgt. Wissner and P.O.s Cooper and Braig.

III.    Rule 8

The FBI defendants and Det. Malone argue plaintiffs have engaged in improper group pleading in violation of Federal Rule of Civil Procedure 8 and that, as a result, plaintiffs' claims against them should be dismissed.

The Court disagrees.

Rule 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests"; indeed, "lumping all the defendants together in each claim . . . provide[s] no factual basis to distinguish their conduct."  Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order).

Here, plaintiffs' "allegations are adequate, as they do not fail to give [defendants] fair notice of the claims against [them]."  See Bueno Diaz v. Mercurio, 442 F. Supp. 3d 701, 712 (S.D.N.Y. 2020).  Indeed, in their respective briefing, the moving defendants address the claims pleaded against them, and, accordingly, do not suggest such claims cannot be discerned.

For these reasons, the Court declines to dismiss plaintiffs' claims for failure to comply with Rule 8.

IV.    First Amendment Claims

The FBI defendants argue plaintiffs cannot, as a matter of law, state a Bivens claim for a violation of the First Amendment.

The Court agrees.

As a preliminary matter, plaintiffs fail plausibly to allege how, if at all, any of the named defendants violated decedent's First Amendment rights.  Indeed, the SAC states, in conclusory fashion, the "defendant FBI agents and local law enforcement officers violated decedent's rights secured by the First . . . Amendment[]."  (SAC ¶ 70).  But plaintiffs plead no other allegations respecting the First Amendment.  Accordingly, plaintiffs fail plausibly to allege any claims predicated on a violation of decedent's First Amendment rights.

Moreover, respecting plaintiffs' claims against the FBI defendants, the Supreme Court has "never held that Bivens extends to First Amendment claims."  Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012).  Indeed, federal courts in this circuit and nationwide "seem to be in agreement that there is no Bivens remedy available for violations of the First Amendment."  Davila v. Gutierrez, 330 F. Supp. 3d 925, 939 (S.D.N.Y. 2018) (collecting cases).

For the above reasons, plaintiffs' First Amendment claims must be dismissed.

V.    Eighth Amendment Claims

The FBI defendants and Det. Malone argue plaintiffs fail plausibly to state Bivens and Section 1983 claims predicated on an alleged violation of the Eighth Amendment.

The Court agrees.

"[T]he Eighth Amendment applies only to claims of cruel and unusual punishment imposed on an individual after he or she has been convicted of a crime."  Younger v. City of New York, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (citing Whitley v. Albers, 475 U.S. 312, 318–19 (1986) ("The Cruel and Unusual Punishments Clause was designed to protect those

11

convicted of crimes, and consequently the Clause applies only after the [government] has complied with the constitutional guarantees traditionally associated with criminal prosecutions.")).

At the time of the alleged incident, decedent was neither convicted of a crime nor incarcerated. Thus, plaintiffs' allegation that the individual defendants used excessive force during the December 15, 2017, surveillance operation implicates the Fourth and Fourteenth Amendments, but not the Eighth Amendment.

Accordingly, plaintiffs' Eighth Amendment claims must be dismissed.

VI.    Unlawful Search and Seizure Claims

The FBI defendants and Det. Malone argue plaintiffs fail plausibly to plead Bivens and Section 1983 claims for unlawful search and seizure in contravention of the Fourth Amendment.

The Court agrees.

"The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." Manuel v. City of Joliet, 137 S. Ct. 911, 918 (2017). Probable cause to effectuate an arrest "is satisfied when the facts and circumstances warrant a reasonably prudent person to believe that a crime was being or had been committed." U.S. ex rel. Montgomery v. Wallack, 255 F. Supp. 566, 569 (S.D.N.Y. 1966). Indeed, "[w]hen officers have probable cause to believe a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest." Virginia v. Moore, 553 U.S. 164, 178 (2008).

Here, plaintiffs cannot plausibly claim defendants did not have probable cause to arrest decedent on December 15, 2017. Plaintiffs acknowledge the reason for the organized surveillance operation and attempted arrest was defendants' belief that the subject vehicle had been stolen and used in furtherance of a bank robbery. On December 15, 2017, the surveilling defendants witnessed decedent approach and enter the subject vehicle. Accordingly, defendants'

attempt to seize decedent was supported by probable cause.  See U.S. ex rel. Montgomery v.

Wallack, 255 F. Supp. at 569 ("That [decedent] was in possession of and driving the car

constituted probable cause for his arrest, whether or not the car was in fact stolen.").

Of course, whether the attendant circumstances of the attempted arrest—for example, the

force used—were lawful is a separate inquiry.  But here, plaintiffs cannot plausibly allege

defendants violated a constitutional right by attempting to arrest decedent.

Accordingly, to the extent plaintiffs plead Bivens and Section 1983 claims predicated on

a theory that the attempted arrest of decedent (as distinguished from the use of force during the

attempted arrest) was unlawful, such claims must be dismissed.

VII.   Excessive Force Claims

The FBI defendants and Det. Malone argue plaintiffs fail plausibly to allege Bivens and

Section 1983 claims for use of excessive force in contravention of the Fourth and Fourteenth

Amendments.  Plaintiffs argue they plausibly allege these defendants either directly participated

in an unlawful use of excessive force or failed to intervene in connection with other defendants'

use of excessive force.

The Court concludes plaintiffs plausibly allege a Bivens claim against the FBI defendants

and a Section 1983 claim against Det. Malone.

A.   Against the FBI Defendants

1.   Bivens Standard

"For a plaintiff to enforce his constitutional rights he must have a cause of action.  That

is, there must be a statute passed by Congress or a judicially implied claim for relief."  Rivera v.

Samilo, 370 F. Supp. 3d 362, 366 (E.D.N.Y. 2019).  Because plaintiffs cannot identify a statute

to prosecute this action, the question remains "whether there is a judicially implied claim for

relief."  Id.

"In <u>Bivens</u>, . . . the Supreme Court recognized an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." <u>McGowan v. United States</u>, 825 F.3d 118, 123 (2d Cir. 2016). Specifically, the Court implied a private right of action under the Fourth Amendment for an unreasonable search and seizure claim against FBI agents for handcuffing a man in his own home without a warrant. <u>See</u> <u>Rivera v. Samilo</u>, 370 F. Supp. 3d at 366 (discussing <u>Bivens v. Six Unknown Narcotics Agents</u>, 403 U.S. at 389, 397).

Since <u>Bivens</u>, the Supreme Court has recognized a damages remedy for constitutional violations in only two other contexts:  (i) under the Fifth Amendment's Due Process Clause for gender discrimination against a congressman for firing his female secretary, <u>Davis v. Passman</u>, 442 U.S. 228, 99 (1979), and (ii) under the Eighth Amendment's prohibition against cruel and unusual punishment for prison officials' failure to treat an inmate's asthma, which led to his death, <u>Carlson v. Green</u>, 446 U.S. 14 (1980).

Recently, the Supreme Court emphasized that "[t]hese three cases—<u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1855 (2017). The Court expressed the need for restraint in expanding the <u>Bivens</u> remedy to additional contexts and cautioned that courts should not imply rights and remedies pursuant to <u>Bivens</u> as a matter of course. <u>Id</u>. at 1856–57. Indeed, "the Court has made clear that expanding the <u>Bivens</u> remedy is now a 'disfavored' judicial activity." <u>Id</u>. at 1857.

The Supreme Court set out a two-step inquiry for courts to determine whether to infer a <u>Bivens</u> cause of action in a new context or against a new category of defendants. "First, the court must determine whether a plaintiff's claims arise in a new <u>Bivens</u> context." <u>Rivera v. Samilo</u>, 370 F. Supp. 3d at 367. "If the case is different in a meaningful way from previous <u>Bivens</u> cases decided by [the Supreme Court], then the context is new." <u>Ziglar v. Abbasi</u>, 137 S.

14

Ct. at 1859.  The Court provided some examples of ways in which a case "might differ in a meaningful way" including:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusions by the Judiciary into the functioning of other branches; or the presence of special factors that previous Bivens cases did not consider.

Id. at 1860.

"Second, if the claim arises in a new context, a court must consider whether there are special factors counseling hesitation in creating a Bivens remedy."  Ramirez v. Tatum, 2018 WL 6655600, at *5 (S.D.N.Y. Dec. 19, 2018) (citing Ziglar v. Abbasi, 137 S. Ct. at 1857).  "The question of what special factors counsel hesitation 'must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action [to] proceed.'"  Id. (citing Ziglar v. Abbasi, 137 S. Ct. at 1857–58).  "Thus, to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative."  Id. (citing Ziglar v. Abbasi, 137 S. Ct. at 1858). "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action."  Ziglar v. Abbasi, 137 S. Ct. at 1858).

2.    Agent Kenney

Plaintiffs plausibly allege a Bivens claim against Agent Kenney for his alleged use of excessive force in contravention of the Fourth Amendment.

"[I]t has long been the practice of courts in this Circuit to permit Bivens claims arising from the use of excessive force in an arrest."  Lehal v. Cent. Falls Det. Facility Corp., 2019 WL 1447261, at *12 (S.D.N.Y. Mar. 15, 2019) (collecting cases).  "Similarly, and after consideration

of [Ziglar v. Abassi, 137 S. Ct. 1843 (2017)], courts in other jurisdictions around the country have also continued to permit such claims, under Bivens." Id. (collecting cases).

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). "The Fourth Amendment test of reasonableness 'is one of objective reasonableness.'" Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (quoting Graham v. Connor, 490 U.S. at 399). Accordingly, to state a Fourth Amendment excessive force claim, a plaintiff must plausibly allege the force used by the defendant was objectively unreasonable. Cox v. City of New Rochelle, 2019 WL 3778735, at *7 (S.D.N.Y. Aug. 12, 2019).

"[T]he inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." Tracy v. Freshwater, 623 F.3d at 96. This assessment may include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether she is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396. It is typically the jury's "unique task . . . to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct." Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999).

Here, as a preliminary matter, plaintiffs' allegations respecting the use of law enforcement vehicles to box in the suspect vehicle do not implicate an excessive or unreasonable use of force claim. See United States v. Perea, 986 F.2d 633, 644 (2d Cir. 1993) (concluding "an otherwise valid stop is not inevitably rendered unreasonable merely because the suspect's car was boxed in by police cars in order to prevent it from being moved").

Notwithstanding, Agent Kenney argues plaintiffs fail plausibly to state an excessive force claim because his conduct was objectively reasonable under the circumstances.  Specifically, he contends (i) that decedent's attempt to drive away, (ii) that he heard a warning from a fellow officer that decedent was armed and raising a gun, and (iii) that he heard multiple rounds of gunfire and saw the rear window of the subject vehicle shatter, all support a finding that his use of force in discharging his own weapon was reasonable.  But plaintiffs allege Agent Kenney and the other defendants failed to identify themselves and were not easily identifiable to decedent as law enforcement personnel.  Accordingly, whether it was objectively reasonable under the circumstances to use deadly force during an attempt to arrest decedent—who, according to plaintiffs, did not know he was surrounded by law enforcement or that he was, in the moment, the subject of an attempted arrest—is a question that cannot be answered at this early stage.

Accordingly, plaintiffs plausibly allege an excessive force claim against Agent Kenney.

        3.      <u>Agents Fisher, Conlon, and McKenna</u>

The FBI defendants argue plaintiffs fail plausibly to allege Agents Fisher, Conlon, and McKenna were personally involved in a constitutional violation because they did not directly participate in an excessive use of force incident, and that plaintiffs' failure to intervene theory of liability as to these defendants raises a new <u>Bivens</u> context that is not actionable.

Although plaintiffs do not allege Agents Fisher, Conlon, and McKenna directly used excessive force, the Court disagrees with the FBI defendants.

"Similar to a suit brought under 42 U.S.C. § 1983, a <u>Bivens</u> action lies against a defendant only when the plaintiff can show the defendant's personal involvement in the constitutional violation."  <u>Sash v. United States</u>, 674 F. Supp. 2d 531, 542 (S.D.N.Y. 2009) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. at 676 ("Because vicarious liability is inapplicable to <u>Bivens</u>

17

and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")).

In <u>Bivens</u> actions, "[t]o establish the requisite personal involvement, a plaintiff may show either that the defendant official was directly involved in the excessive use of force itself, or that the defendant official failed to intervene to prevent such a use of force by another official actor." <u>Lehal v. Cent. Falls. Det. Facility Corp.</u>, 2019 WL 1447261, at *13.  With respect to the latter, "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene and protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  <u>Id</u>. at *14 (quoting <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994)).

Here, the Court is not persuaded by the FBI defendants' argument that plaintiffs' failure to intervene claim raises a new <u>Bivens</u> context.  To argue same, the FBI defendants rely largely on <u>Martinez v. D'Agata</u>, 2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019), and <u>Rivera v. Samilo</u>, 370 F. Supp. 3d 362 (E.D.N.Y. 2019), a decision from another court in this circuit.

In <u>Rivera</u>, the court concluded "the location of the arrest and the existence of a warrant" presented a new <u>Bivens</u> context, "and determined that special factors counseled against recognizing a damages remedy."  <u>Id</u>. at 711.  Specifically, the court "concluded that the availability of an FTCA remedy <u>bars</u> a <u>Bivens</u> remedy."  <u>See</u> <u>Bueno Diaz v. Mercurio</u>, 442 F. Supp. 3d at 710 (discussing <u>Rivera v. Samilo</u>, 370 F. Supp. 3d at 371) (emphasis added). However, in <u>Lehal v. Central Falls Detention Facility Corporation</u>, 2019 WL 1447261 (S.D.N.Y. Mar. 15, 2019), a court in this district "concluded the opposite."  <u>See</u> <u>Bueno Diaz v. Mercurio</u>, 442 F. Supp. 3d at 710–11.  Indeed, "<u>Rivera</u> fails to account for the Supreme Court's repeated insistence that the FTCA [and the availability of a remedy under same] does not preclude a <u>Bivens</u> remedy."  <u>See</u> <u>id</u>.

Further, in D'Agata, this Court held, in a decision resolving a motion for summary judgment, that a plaintiff's claim for failure to intervene presented a new Bivens context.  There, however, the summary judgment record demonstrated the plaintiff's failure to intervene claim was not supported by evidence that the defendants were involved, in some way, in an excessive force incident.  See Martinez v. D'Agata, 2019 WL 6895436, at *1.  The plaintiff's failure to intervene claim, therefore, attempted to expand the scope of the pleaded claim.  Indeed, a failure to intervene claim "does not itself state a separate constitutional violation," but, rather, "a theory of liability" for the alleged use of excessive force.  See Ismael v. Charles, 2020 WL 4003291, at 12 (S.D.N.Y. July 15, 2020).  Accordingly, the Court declined to find a Bivens remedy specifically for the plaintiff's standalone failure to intervene claim in D'Agata.  Id. at *7.

But here, plaintiffs allege Agents Fisher, Conlon, and McKenna were present during and took part in the surveillance operation, were present for the attendant shooting, and failed to take any action to prevent the shooting or quell its magnitude.  Plaintiffs assert such conduct renders these defendants liable for having failed to "protect the constitutional rights of [decedent] from infringement by other law enforcement officers in their presence."  See Lehal v. Cent. Falls. Det. Facility Corp., 2019 WL 1447261, at *14.

It may turn out that Agents Fisher, Conlon, and McKenna had no reasonable opportunity to intervene and, therefore, did not fail to safeguard decedent's constitutional rights.  But for the above reasons, plaintiffs' Bivens claims against Agents Fisher, Conlon, and McKenna for failure to intervene to protect against the use of excessive force, may proceed.

B.      Against Det. Malone

Det. Malone argues plaintiffs' Section 1983 claim predicated on a theory of liability for failure to intervene should be dismissed.

The Court disagrees.

19

As noted above, "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d at 557. "Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." Jean-Laurent v. Wilkerson, 461 F. App'x 18, 21 (2d Cir. 2012) (summary order). "However, in order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id. Claims for excessive force and failure to intervene to prevent the use of excessive force may proceed simultaneously in the alternative. Cumberbatch v. Port Auth. of N.Y. & N.J., 2006 WL 3543670, at *11 (S.D.N.Y. Dec. 5, 2006).

Plaintiffs allege Det. Malone, like Agents Fisher, Conlon, and McKenna, was present during the excessive force incident. This allegation, combined with plaintiffs' other allegations regarding the nature of the incident, as discussed above, are sufficient to state a Section 1983 claim against Det. Malone for failure to intervene.

VIII.   Deliberate Indifference to Serious Medical Needs Claims

The FBI defendants and Det. Malone argue plaintiffs fail plausibly to allege Bivens and Section 1983 claims for deliberate indifference to serious medical needs in derogation of the Fifth and Fourteenth Amendments.

The Court disagrees.

To state a deliberate indifference to serious medical needs claim, a plaintiff's allegations must satisfy two prongs:  an objective prong and a mens rea prong. Namely, a plaintiff must plausibly allege "that the challenged conditions were sufficiently serious," and defendants "acted with at least deliberate indifference to the challenged conditions." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).

A.      Against the FBI Defendants

The FBI defendants assume but do not concede "that a <u>Bivens</u> remedy exists for an officer's deliberate indifference to the medical needs of an arrestee under the Fifth Amendment." (<u>See</u> 19 Civ. 2117 Doc. #106 at 6).  Accordingly, the Court assumes for purposes of the FBI defendants' motion that this context falls within the <u>Bivens</u> framework provided by <u>Carlson v. Green</u>, 446 U.S. 14 (1980).

The FBI defendants argue the claim should be dismissed because plaintiffs fail plausibly to allege the FBI defendants had any involvement in the events following decedent's shooting, and because "'[t]he obligation of police to provide necessary medical treatment . . . is satisfied when the police summon medical assistance; they have no duty to provide that assistance themselves,' even in 'extreme' situations."  (19 Civ. 2117 Doc. #85 at 18 (quoting <u>Rasmussen v. City of New York</u>, 766 F. Supp. 2d 399, 414 (E.D.N.Y. 2011)).

Here, plaintiffs do not set forth a timeline of the surveillance operation, comprising the shooting, subsequent searches of the subject vehicle and decedent, and the call for medical assistance.  Accordingly, whether there was any delay, reasonable or not, between the shooting and the call for medical assistance, is unknown.  At this stage of the proceedings, however, plaintiffs plausibly allege the FBI defendants—who were present at the scene of the shooting and aware dozens of rounds of ammunition were fired at decedent—failed to seek medical treatment for decedent within a reasonable amount of time, and thus acted with deliberate indifference to decedent's serious medical needs.

Ultimately, an evidentiary record may well reveal the FBI defendants timely responded to decedent's medical needs.  But here, accepting the facts alleged as true, plaintiffs' deliberate indifference claim against the FBI defendants may proceed.

B.    Against Det. Malone

Det. Malone argues plaintiffs "fail to allege or offer specific facts linking [him] to the claimed denial of medical treatment."  (19 Civ. 2117 Doc. #92 at 9).  He further alleges plaintiffs' Section 1983 deliberate indifference claim fails as a matter of law because "'[o]fficials who act reasonably' in response to the need for medical treatment are not liable" (id. (quoting Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006)), and "the obligation of the police to provide necessary medical treatment upon the obvious need for treatment is satisfied when the police summon medical assistance; they have no duty to provide that assistance themselves." (Id. (citing DiGennaro v. Town of Gates Police Dep't, 2013 WL 3097066, at *16 (W.D.N.Y. June 18, 2013)).

But Det. Malone ignores that the above-quoted obligation "is met by seeing that the arrestee is taken promptly to a hospital that provides the treatment necessary for his injury." DiGennaro v. Town of Gates Police Dep't, 2013 WL 3097066, at *16 (emphasis added).  Here, plaintiffs allege defendants, including Det. Malone, did not promptly call for medical assistance. Given this and plaintiffs' other allegations respecting the surveillance operation, plaintiffs plausibly allege Det. Malone acted with deliberate indifference in failing timely to seek medical care for decedent following the shooting.

For the above reasons, plaintiffs' deliberate indifference claim against Det. Malone may also proceed.

IX.    Conspiracy Claims

Plaintiffs allege the FBI defendants and Det. Malone conspired to deny decedent of his constitutional rights, and that such conspiracy continued after decedent was shot and killed. They claim, on "information and belief," that defendants also filed false and misleading reports regarding the circumstances of the attempted arrest.

22

The FBI defendants and Det. Malone argue plaintiffs' conclusory allegations fail to support actionable conspiracy claims.

The Court agrees with defendants.

To state a claim for civil rights conspiracy, a plaintiff must plausibly allege "(1) an agreement between two or more . . . actors; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

"Given 'the relative ease with which conspiracy allegations may be brought, and the substantial disruption of governmental function that they can cause,' a claimant is required to furnish 'more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive [the claimant] of his constitutional rights.'" Powell v. United States, 2020 WL 5126392, at *9 (S.D.N.Y. Aug. 31, 2020) (quoting Nwanze v. Philip Morris, Inc., 100 F. Supp. 2d 215, 219 (S.D.N.Y. 200), aff'd sub nom. Nwanze v. Morris, 6 F. App'x 98, 101 (2d Cir. 2001) (summary order)). Indeed, a plaintiff must "do more than append, 'on . . . belief,' the label of 'agreement' to otherwise independent charges of constitutional misconduct, in order to state a conspiracy claim." Id.

Here, plaintiffs' allegations of a conspiracy among the individual defendants are wholly conclusory. The allegations do not plausibly suggest an "express or tacit" agreement among defendants to deprive decedent of his constitutional rights and "achieve [an] unlawful end." See Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009). Accordingly, plaintiffs' bald assertions of conspiracy fail plausibly to allege such a claim. See Williams v. Rosenblatt Sec. Inc., 136 F. Supp. 3d 593, 611 (S.D.N.Y. 2015) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").

Moreover, although plaintiffs argue in their opposition that the SAC states an actionable conspiracy claim pursuant to 42 U.S.C. § 1985—an allegation not contained in the SAC—this argument also fails.   A Section 1985 conspiracy "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  Such allegations are absent here.

For the above reasons, plaintiffs' conspiracy claims against the FBI defendants and Det. Malone must be dismissed.

X.      Assault and Battery Claims

        A.      Against the FBI Defendants

The FBI defendants argue plaintiffs' state law assault and battery claim should be dismissed because such a claim is not actionable under Bivens, and because the FBI defendants are immune from tort claims arising from conduct undertaken in the course of their official duties.

The Court agrees.

"Under Bivens, a plaintiff may bring claims against federal officers only in their personal capacities for a violation of certain constitutional rights."  Adekoya v. Holder, 751 F. Supp. 2d 688, 693 (S.D.N.Y. 2010) (emphasis added).  Moreover, "federal employees enjoy absolute immunity from tort claims arising out of acts undertaken in the course of their official duties." De Masi v. Schumer, 608 F. Supp. 2d 516, 520 (S.D.N.Y. 2009).

Here, no Bivens remedy exists for an assault and battery claim pleaded against federal officers in their personal capacities.  Furthermore, plaintiffs allege the FBI defendants' conduct was undertaken in the course of their official duties.

For the above reasons, plaintiffs' assault and battery claim against the FBI defendants must be dismissed.

B.      Against Det. Malone

Det. Malone argues plaintiffs' assault and battery claim should be dismissed.

The Court disagrees.

"[W]ith the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical." Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) (citing Posr v. Doherty, 944 F.2d 91, 94–95 (2d Cir. 1991)).  "In effect, the test for whether a plaintiff can maintain [state law assault and battery] cause[s] of action against law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim."  Id.

Here, plaintiffs assert that during the surveillance operation, Det. Malone may have been acting as an employee of the WPD, and, as result, his conduct might be actionable under Section 1983, rather than Bivens.  (See SAC ¶ 26).  And because, as noted above, plaintiffs plausibly allege an excessive force claim against Det. Malone under a failure to intervene theory of liability, their assault and battery claim against Det. Malone may also proceed.

C.      Against the United States

Lastly, the United States argues plaintiffs' FTCA assault and battery claim should be dismissed.

The Court disagrees.

"Although assault and battery claims against the federal government are usually prohibited, the FTCA permits such claims where, as here, federal law enforcement officers are alleged to have committed assault or battery."  Cuoco v. U.S. Bureau of Prisons, 2003 WL 22203727, at *4 (S.D.N.Y. Sept. 22, 2003) (citing 28 U.S.C. § 2680(h)).  Indeed, "[t]he FTCA explicitly avoids waiving sovereign immunity for 'any claim arising out of assault, battery,' and

several other intentional torts." <u>Leytman v. U.S. Dep't of Homeland Sec.</u>, 804 F. App'x 78, 80 (2d Cir. 2020) (summary order) (quoting 28 U.S.C. § 2680(h)).

"The same excessive force . . . principles apply to the FTCA cause of action for assault and battery against the United States." <u>Scott v. City of White Plains</u>, 2013 WL 1313774, at *8 (S.D.N.Y. Mar. 18, 2013).  Accordingly, to state "this FTCA cause of action, then, plaintiff must [plausibly suggest] that the amount of force used was objectively unreasonable."  <u>See</u> <u>id</u>.

As discussed above, plaintiffs plausibly allege the amount of force used by the individual defendants during the surveillance operation was objectively unreasonable.  Accordingly, plaintiffs' FTCA assault and battery claim may proceed.

XI.   <u>Qualified Immunity</u>

The United States argues Agent Kenney and Det. Marello[6] are entitled to qualified immunity with respect to plaintiffs' excessive force and assault and battery claims.  The FBI defendants and Det. Malone also argue they are entitled to qualified immunity with respect to same, and further argue they are also entitled to qualified immunity with respect to plaintiffs' deliberate indifference to serious medical needs claims.

At this stage of the proceedings, the Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law."  <u>Malley v.</u>

---

[6]      The United States argues that "of the five individuals Plaintiffs allege were involved in shooting [decedent], only FBI Special Agent Kenney and [Det.] Marello are 'federal employees' whose conduct can be imputed to the United States."  (19 Civ. 9444 Doc. #20 at 2).  As discussed earlier, the Court declines to make such finding at this stage of the proceedings.

Briggs, 475 U.S. 335, 341 (1986).  "Defendants bear the burden of establishing qualified immunity."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

"The issues on qualified immunity are:  (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful."  Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013).

"[A] defendant asserting a qualified immunity defense on a motion to dismiss faces a formidable hurdle and is usually not successful."  Barnett v. Mount Vernon Police Dep't, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order).  "The defense will succeed only where entitlement to qualified immunity can be established based solely on the facts appearing on the face of the complaint."  Id.  "For these reasons, a motion to dismiss is a mismatch for immunity and almost always a bad ground of dismissal."  Id.

First, the constitutional law that governs excessive force and deliberate indifference to serious medical needs claims was clearly established at the time of the events in question.  See Usavage v. Port Authority of N.Y. & N.J., 932 F. Supp. 2d 575, 598 (S.D.N.Y. 2013); see also Maldonado v. Town of Greenburgh, 2020 WL 2521450, at *8 (S.D.N.Y. May 18, 2020).

Second, plaintiffs' allegations raise questions whether defendants' conduct was objectively reasonable, and whether, under like circumstances, any reasonable law enforcement officer would have believed the conduct at issue was lawful.  Indeed, plaintiffs allege none of the individual defendants at the scene of the surveillance operation identified himself as law enforcement, and, accordingly, decedent was unaware that he was the subject of an attempted arrest when multiple individuals with guns drawn surrounded and fired upon him.  Plaintiffs' allegations, which the Court is obliged to accept as true, call into question whether the

defendants' conduct, which includes the use of deadly force during the surveillance operation, was reasonable under the circumstances.  Moreover, whether any of the defendants had a realistic opportunity to intervene to prevent decedent's harm presents an inquiry normally reserved for a jury, "unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  Sloley v. VanBramer, 945 F.3d 30, 47 (2d Cir. 2019).  Such conclusion cannot be made at this juncture.

Furthermore, although plaintiffs do not provide a timeline of the surveillance operation, the allegations in the operative pleadings suggest that following the squall of gunfire and defendants' searches of the subject vehicle and decedent, defendants did not promptly call for medical assistance.  "[A] delay in providing necessary medical care may in some cases constitute deliberate indifference in the Second Circuit."  Maldonado v. Town of Greenburgh, 2020 WL 2521450, at *8.  And "delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay."  Id.  "These factors are simply too fact-intensive in the alleged circumstances to rule as a matter of law that qualified immunity applies to protect" defendants at this stage.  See id.

For the above reasons, in view of plaintiffs' allegations, the qualified immunity defenses asserted here do not present grounds for dismissal and are better suited for resolution on summary judgment or otherwise.

XII.   Negligence Claims

The United States and Det. Malone argue plaintiffs' negligence and negligent hiring, training, and supervision claims must be dismissed.

The Court agrees.

"Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effectuating an arrest." Saheed v. City of New York, 2020 WL 1644006, at *17 (S.D.N.Y. Apr. 2, 2020) (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).  Moreover, New York law also "does not permit a claim for negligent hiring, training, retention or supervision where the defendants act in the scope of their employment." Schoolcraft v. City of New York, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015) (collecting cases).

Here, plaintiffs allege law enforcement officials failed, while acting within the scope of their employment and official duties, to exercise the appropriate degree of care in effectuating decedent's arrest. See Saheed v. City of New York, 2020 WL 1644006, at *17.  Moreover, plaintiffs do not contest defendants' arguments respecting this issue.

Accordingly, plaintiffs' negligence and negligent hiring, training, and supervision claims against the United States and Det. Malone must be dismissed.

XIII.   Intentional and Negligent Infliction of Emotional Distress Claims

The United States and Det. Malone argue plaintiffs' intentional and negligent infliction of emotional distress claims should be dismissed.

The Court agrees.

A.      Against the United States

As noted herein, "[t]he liability of the federal government under the FTCA is generally determined by state law." Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996) (citing 28 U.S.C. § 2674).  Under New York law, a plaintiff can state a negligent infliction of emotional distress claim in one of two ways:  "(1) the 'bystander' theory; or (2) the 'direct duty theory.'" Id.  The former requires plausible allegations that the plaintiff "is threatened with physical harm as a result of defendant's negligence," and "consequently . . . suffers emotional injury from

witnessing the death or serious bodily injury of a[n immediate family] member."  Id.  The latter requires the plaintiff to allege the "defendant's breach of a duty . . . unreasonably endangered [plaintiff's] own physical safety."  Id.

Here, plaintiffs allege "Robert Campbell, Aida Campbell, and Eric Campbell suffered severe psychological and emotional trauma."  (Compl. ¶ 106).  But plaintiffs do not allege they witnessed any part of the December 15, 2017, surveillance operation, the shooting, or decedent's death.  Moreover, plaintiffs fail plausibly to allege their own physical safety was endangered by the federal government or its agents.  Rather, in their opposition, plaintiffs reframe their allegations and argue the federal government is liable for its agents' negligent infliction of emotional distress upon the decedent, rather than plaintiffs.  This new theory is improperly raised "for the first time in opposition papers and will not be considered."  Red Fort Capital, Inc. v. Guardhouse Prods. LLC, 397 F. Supp. 3d 456, 480 n.8 (S.D.N.Y. 2019).

In short, plaintiffs do not set forth allegations respecting either theory of liability for negligent infliction of emotional distress under New York law.  Moreover, "the conduct that gives rise to [plaintiffs'] excessive force and assault and battery claims is also the conduct on which [their] negligent infliction of emotional distress claim relies."  See Casaccia v. City of Rochester, 2018 WL 324420, at *8 (W.D.N.Y. Jan. 8, 2018).  Accordingly, plaintiffs' negligent infliction of emotional distress claim against the United States must be dismissed.

B.      Against Det. Malone

Plaintiffs allege both intentional and negligent infliction of emotional distress claims against "the defendant local law enforcement officers."  (See SAC ¶¶ 280–86).  Det. Malone argues such claims must be dismissed.  (See 19 Civ. 2117 Doc. #92 at 10).

The Court agrees.

Plaintiffs fail to state a negligent infliction of emotional distress claim against Det. Malone for the same reasons they fail to plead such a claim against the United States, as discussed above.  Indeed, plaintiffs allege they "suffered extreme emotional distress" and "severe psychological and emotional trauma" due to the conduct of "local law enforcement officers," (SAC ¶¶ 283, 286), but do not plausibly allege facts suggesting an actionable bystander or direct duty theory of liability.

Plaintiffs also fail plausibly to state an intentional infliction of emotional distress claim against Det. Malone.

Under New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must plausibly allege:  "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  Rich v. Fox News Network, LLC, 939 F.3d 112, 122 (2d Cir. 2019).  "The standard of outrageous conduct is strict, rigorous and difficult to satisfy."  Id.

"[C]ourts in this Circuit have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory." Caravalho v. City of New York, 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 13, 2016).  Here, plaintiffs' claim of intentional infliction of emotional distress arising out of the use of excessive force is subsumed by their excessive force and assault and battery claims.  As such, plaintiffs' intentional infliction of emotional distress claim "must be dismissed as duplicative."  See Centeno v. City of New York, 2019 WL 1382093, at *6 (S.D.N.Y. Mar. 27, 2019).

XIV.   <u>Wrongful Death, Conscious Pain and Suffering, and</u>
       <u>Loss of Love, Support, and Family Claims</u>

The United States argues plaintiffs' remaining state law claims "are derivative of the

defective assault, battery, and negligence claims," and thus must be dismissed.  (19 Civ. 9444

Doc. #33 at 10).  Det. Malone argues these claims "lack any merit whatsoever."  (19 Civ. 2117

Doc. #92 at 10).

Because plaintiffs' assault and battery claims against the United States and Det. Malone

survive dismissal, the Court declines to dismiss plaintiffs' derivative state law claims.

**CONCLUSION**

The motions to dismiss are GRANTED IN PART and DENIED IN PART.

Plaintiffs' negligence and negligent infliction of emotional distress claims against the

United States are dismissed.  Plaintiffs' First Amendment, Eighth Amendment, conspiracy, and

assault and battery claims against Agents Brendan Kenney, Andrew Fisher, Daniel Conlon, and

Daniel McKenna, are dismissed.  Plaintiffs' First Amendment, Eighth Amendment, conspiracy,

negligence, and intentional and negligent infliction of emotional distress claims against Detective

Terence Malone are dismissed.  All other claims shall proceed.

By September 29, 2020:  (i) the United States shall file an answer to plaintiffs' complaint

(19 Civ. 9444 Doc. #1); and (ii) Agents Brendan Kenney, Andrew Fisher, Daniel Conlon, and

Daniel McKenna, and Detective Terence Malone, shall file an answer to plaintiffs' second

amended complaint (19 Civ. 2117 Doc. #67).

The Clerk is instructed to terminate the motions.  ((19 Civ. 9444 Doc. #17) and (19 Civ. 2117 Docs. ##84, 90)).

Dated: September 15, 2020
       White Plains, NY

                                     SO ORDERED:

                                     Vincent L. Briccetti
                                     United States District Judge